## C. GRACE KELLEY *vs.* IRVING M. RUBIN.

Suffolk.    January 19, 1927. — May 18, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Landlord and Tenant*, Construction of lease.   *Negligence*, Of one owning or controlling real estate, Coal hole.

The first floor of a three-story and basement building was occupied by a store.   The owner let the store "and part of basement to be used for sale of cloaks and suits and for no other purpose, which may include ladies' wearing apparel," by a lease in which the lessee agreed that he would "furnish heat for the whole building and that he . . . [would] keep the whole building properly heated and comfortable for the use of all tenants," and that he would "keep the cellar clear from any and all rubbish."   There also were covenants by the lessee to keep the premises in repair and to save the lessor harmless from "any claim or damage arising from neglect in not removing snow and ice from the roof of the building, or from the sidewalks bordering upon the premises so leased, or by any nuisance made or suffered on the premises."   The lessor agreed to "contribute towards heating the said building fifteen . . . tons of coal each and every year."   The basement extended under the sidewalk and contained a furnace which heated the entire building. In front of the furnace was a coal hole in the sidewalk above through which coal was delivered and spread out on the cellar floor.   There was no coal bin.   The lessee took possession in June and did nothing about the furnace or coal until a day in October, when coal was put in upon an order given on behalf of the lessor in performance of his obligation. On that day a traveller on the sidewalk fell through the coal hole because the cover was defective.   In an action against the tenant, it was *held*, that
    (1) There was no ambiguity in the language of the lease;

(2) The lessee, by his agreement to heat, was given a present right in the basement and undertook control of the furnace and of the appliances for the supply of coal;

(3) There was nothing to indicate that the lessor retained any control over the basement or sidewalk;

(4) The construction of the lease was for the trial judge;

(5) A verdict for the plaintiff was warranted.

TORT for personal injuries received when the plaintiff fell into a coal hole. Writ dated November 9, 1923.

In the Superior Court, the action was tried before *Weed,* J. Material evidence is stated in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"3. There is no evidence that the defendant was in control of the coal hole at the time of the accident.

"4. The defendant Rubin was not the lessee of that part of the basement containing the furnace, coal and coal hole under the terms of the lease."

"6. On all the evidence the lessor Rosenfield was in control of the coal hole and cover.

"7. The provision in the lease permitting the lessor to go upon the premises and make repairs placed him in control of the coal hole.

"8. Even if the coal hole is a part of the leased premises under the terms of the lease, the provision of the lease permitting the lessor to enter on the premises for the purpose of repair put the lessor in control of the premises so far as was necessary to keep them in proper and safe condition.

"9. If the jury finds that in a conversation between the lessor and the lessee the lessor recognized the duty to keep the coal hole safe, this would be an admission of control over the coal hole.

"10. If the jury finds that the defendant Rubin after the accident placed a weight under the coal hole cover, he did so as the agent of the lessor Rosenfield.

"11. On all the evidence the defendant Rubin was the agent of the lessor Rosenfield in directing the teamster of the Metropolitan Coal Company where to place the loads of coal."

"17. The stipulations in the lease requiring the defendant to furnish heat for the building did not carry with it the control of the coal hole."

"19. The replacement of the sidewalk after the accident by the lessor is an admission of control of the premises."

"28. It is a question for the jury whether Rubin had control of the coal hole.

"29. It is for the jury to determine whether on all the evidence the defendant Rubin was in control of that part of the premises containing the coal hole and cover. If they find that the defendant was not in control, their verdict should be for the defendant Rubin."

The rulings were refused and there was a verdict for the plaintiff in the sum of $6,833. The defendant alleged exceptions.

*W. B. Leach, Jr.,* for the defendant.

*J. J. Cummings,* for the plaintiff.

WAIT, J. The plaintiff was injured by a fall caused by the tipping of the cover of a coal hole in the sidewalk adjoining premises numbered 1071 on Washington Street, in Boston. She brought separate actions against the city of Boston; against Mrs. Rosenfield, the owner of the premises; and against the defendant Rubin, lessee of part of the premises. The actions were tried together to a jury. Verdicts were found for the plaintiff against the owner and the lessee, and for the defendant city of Boston. This case is before us upon a bill of exceptions claimed by the lessee, in which he presents for determination whether the judge was right in ruling that the lessee was in control of the coal hole, and agrees that "if the judge was correct in ruling as a matter of law that the coal hole and cover were in the control of the defendant under the lease, there was sufficient evidence on other aspects of the case to warrant a verdict for the plaintiff."

Number 1071 Washington Street was a three-story and basement building. The street floor was taken up by a store and a hallway entrance to the basement and the two upper stories. Stairways in this hallway extended from the basement to the third floor. On each floor a door opened into the hallway. The basement extended under the sidewalk. In it was the furnace, which heated the entire building. The coal hole was in front of the furnace, and coal which came

through the coal hole spread out on the cellar floor. There was no bin for coal.

Mrs. Rosenfield, by indenture of lease dated March 19, 1923, demised to Rubin for a term of five years from June 1, 1923, "Store numbered 1071 Washington Street, Boston, and part of basement to be used for sale of cloaks and suits and for no other purpose, which may include ladies' wearing apparel." The instrument continued: "It is hereby agreed that the said lessee will furnish heat for the whole building and that he will keep the whole building properly heated and comfortable for the use of all tenants, and that the lessor will contribute towards heating the said building fifteen (15) tons of coal each and every year. In addition thereto the said lessee agrees that he will keep the cellar clear from any and all rubbish . . . . It is further agreed that the said Lessee will furnish heat from October first until May first, each and every year." The other parts of the lease material to this controversy are as follows: The lessee covenanted that he "will keep . . . said premises in such repair, order and condition as same are in at the commencement of said term, or may be put in during the continuance thereof . . . will save the Lessor harmless from . . . any claim or damage arising from neglect in not removing snow and ice from the roof of the building, or from the sidewalks bordering upon the premises so leased, or by any nuisance made or suffered on the premises . . . will hold the Lessor harmless and indemnified against any injury, loss or damage to any person or property on said premises . . . and the Lessor or her agents may . . . make repairs and alterations if she should elect so to do . . . ."

He took possession June 29, 1923. He did nothing about the furnace or coal before the accident which happened on October 9, 1923. Frequent complaints were made to him before October 9, about the cover of the coal hole. He testified, and Mrs. Rosenfield and her husband, who acted as her agent, both denied, that before October 9, he spoke of these to the lessor and that she promised to fix it. There was no contradiction that before the letting the annual coal consumption was discussed. On October 9, coal was put

in upon an order given on behalf of the lessor in performance of her obligation. It is agreed that no negligence of the coal dealer in putting in the coal contributed to the accident. Rubin had put some boxes, emptied of the goods sent in them for his store, in the basement.

There is no ambiguity in the language of the lease. The defendant contends that it is so indefinite with regard to the basement that no demise of the basement can be found. We cannot yield to this contention. It is too plain to require argument that Rubin was given a present right in the basement and by his agreement to heat, undertook control of the furnace and of the appliances for the supply of coal. The lessor was bound to pay for, or to furnish, fifteen tons of coal; but there is nothing to indicate that she retained any control of basement or sidewalk.

The construction of the written contract was for the judge. There is nothing in the other testimony admissible to control his ruling as matter of law. *Menage* v. *Rosenthal,* 175 Mass. 358.

The case falls within the principle illustrated by *Wixon* v. *Bruce,* 187 Mass. 232, and *Appleton* v. *O'Donnell,* 173 Mass. 398.

*Exceptions overruled.*